UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **MICROFILM SYSTEMS INC** | **CIVIL ACTION NO. 23-690** |
| **VERSUS** | **JUDGE EDWARDS** |
| **GOTHAM INSURANCE CO** | **MAGISTRATE JUDGE HORNSBY** |

**MEMORANDUM ORDER**

Before the Court are three motions for partial summary judgment. The plaintiff, Microfilm Systems, Inc. ("Microfilm"), filed the first (R. Doc. 33) and the second (R. Doc. 35). The defendant, Gotham Insurance Company ("Gotham") filed the third (R. Doc. 37). Each motion is opposed.

After careful consideration of the parties' memoranda and the applicable law, Microfilm's first Motion is **GRANTED IN PART** and **DENIED IN PART**, Microfilm's second Motion is **GRANTED**, and Gotham's Motion is **DENIED.**

**I.      BACKGROUND**

This case stems from a coverage dispute between Microfilm and its insurer, Gotham. R. Doc. 1 at 4–15. Microfilm is in the business of storing and safekeeping large quantities of "medical, governmental, [and] business" records for its customers. *Id.* at 2–3. It stores these records in its six-story warehouse in Shreveport, Louisiana. *Id.* at 2; R. Doc. 37-3 at 13.  On or about September 7, 2022, a sprinkler head malfunctioned on the fourth floor of Microfilm's warehouse, causing "extensive [water] damage" to the warehouse and its contents. R. Doc. 1 at 3. At the time of the incident, Microfilm held an insurance policy with Gotham. *Id.*  Displeased with

Gotham's alleged delay in tendering undisputed proceeds and their denial of certain coverages, Microfilm filed suit. *Id.* at 4–15.

### 1. Microfilm's First Motion

In its first Motion for Summary Judgment, Microfilm seeks our summary dispensation of two issues. R. Doc. 33. First, Microfilm would like us to hold that $931,348.24 of Gotham's payments were withheld in bad faith. *Id.* at 2. Second, Microfilm would like us to hold that the policy "provides coverage for freeze-drying expenses." *Id.*

On the first issue, Microfilm alleges that Gotham received "satisfactory proof of loss" under La. R.S. 22:1892 more than thirty days prior to Gotham's tendering of the $931,348.24. R. Doc. 33-1 at 14–17. Because these amounts were "undisputed," and because Gotham predicated their release on the completion of a "signed proof of loss" form, Microfilm alleges that it is entitled to bad-faith statutory penalties. *Id.* at 15, 20. For the second issue, Microfilm argues that the policy's $2,500 cap to "replace" or "restore" the information on valuable documents does not apply to Microfilm's freeze-drying of records, which is instead, "preserving the document or protecting the actual paper from further damage or deterioration." *Id.* at 25–27. Accordingly, Microfilm alleges that it is entitled to the $130,929.77 that it spent to have certain documents freeze-dried, as such preservation was commanded by the policy's requirement of the insured to mitigate their damages. *Id.* at 23–24.

Gotham filed an Opposition. R. Doc. 39. Gotham contends that the proof of loss forms that it required before tendering proceeds were "critical" to determining whether the lost property was covered by another insurance policy or whether

another person had an insurable interest in the property. *Id.* at 14. Accordingly, Gotham avers that it did not act in bad faith in requiring the execution of such forms prior to releasing the $931,348.24. *Id.* at 15. On the freeze-drying issue, Gotham asserts that the policy's $2,500 limitation applies to the "freeze[-]drying, preserving, and drying" of records, and that the policy clearly delineates the difference between the *information* on valuable papers, as opposed to the paper itself. *Id.* at 17–18. Thus, Gotham contends that Microfilm cannot show that it acted in bad faith, nor that it could owe more than $2,500 for freeze-drying expenses. *Id.* at 18. Accordingly, Gotham opposes summary judgment on both issues. *Id.*

Microfilm filed a Reply, asserting once again that Gotham's requirement of a signed proof of loss form does not begin, or alter, the thirty-day period set out in La. R.S. 22:1892. R. Doc. 47 at 2–6. Furthermore, Microfilm again insists that the $130,929.77 it spent on freeze-drying the records was to "preserve" them, and not to "replace" or "restore" them, thus making the freeze-drying expenses unsusceptible to the $2,500 policy cap. *Id.* at 6–7.

### 2. Microfilm's Second Motion

In its second Motion for Summary Judgment, Microfilm seeks our holding that the policy permits it to collect the value of "damaged papers, x-rays, folders, and microfilm" owned by its customers. R. Doc. 35-1 at 6, 13–14. Microfilm contends that Gotham has admitted coverage with respect to these materials and that Gotham's insistence on the owner(s) of the materials asserting any claim(s) for their loss is not supported by the policy, nor Louisiana law. *Id.* at 12, 19–20, 27–28. As Microfilm

sees it, the policy covers these losses, and as depositary, it is Microfilm's duty to collect any insurance proceeds and tender them to the depositor(s)—its customers. *Id.* at 27.

Gotham filed an Opposition. R. Doc. 40. Within, Gotham contends that the policy only permits payment of covered property to the owner(s) of that property. *Id.* at 3. In that same vein, Gotham avers that Microfilm's receipt of proceeds for the losses of third parties would constitute being "paid more than its financial interest in the property"—which it asserts is prohibited by the policy. *Id.* at 3–4. Instead, Gotham asserts that Microfilm has only a "business income" interest in the damaged records, which is not covered by the policy. *Id.* at 4. Accordingly, Gotham alleges that Microfilm is seeking an "impermissible windfall" in trying to collect for losses of materials it did not own—especially since the owner(s) of the lost materials apparently haven't asked Microfilm to replace or restitute the materials. *Id.* at 15.

Microfilm filed a Reply. R. Doc. 48. Microfilm asserts that Gotham's policy language regarding the property of others is permissive of, but does not demand, direct payment to the owner of the property. *Id.* at 2. As such, Microfilm contends that it may bring a claim for those customer-owned materials, and again, that Louisiana law commands this course of action by Microfilm. *Id.* at 3.

**3. Gotham's Motion**

Gotham filed a motion for partial summary judgment as well. R. Doc. 37. It operates as a cross-motion to both of Microfilm's motions in that it seeks adjudgment that (1) the $2,500 cap applies to Microfilm's freeze-drying expenses, (2) that Microfilm lacks standing to assert claims, or collect proceeds, flowing from the loss of property owned by others, and (3) that Microfilm is not entitled to bad faith penalties.

*Id*. at 1–2. In support of its contentions, Gotham mostly reiterates the arguments and evidence it cited in opposition to Microfilm's motions. However, Gotham additionally raises the issue of Microfilm seeking the payroll expenses that it incurred in having its existing employees "mov[e], unbox[], box[], and dry[] records." R. Doc 37-1 at 17. While generally denying these expenses as capped to $2,500, Gotham contends that Microfilm has failed to provide sufficient itemization of the labor it seeks to have reimbursed. *Id*. at 19. Again, Gotham asserts that Microfilm has no insured interest in the damaged materials and likens Microfilm's service to that of a self-storage facility—wherein the financial interest of the owner of the space is limited to the space itself, not the property stored in the space. *Id*. at 20–21. Finally, in contesting Microfilm's bad faith claim, Gotham cites authority for the proposition that it cannot be acting in bad faith by withholding payment when there exists a genuine dispute regarding coverage. *Id*. at 22.

Microfilm filed an Opposition. R. Doc. 42. Microfilm offers again that its duty under the policy to mitigate damages required it to "preserve" the records by freeze-drying them. *Id*. at 16–18. Accordingly, Microfilm reiterates that the policy's $2,500 cap on replacing or restoring the information on valuable records does not apply. *Id*. at 19–20. Furthermore, Microfilm asserts that the policy should cover the labor expenses incurred in Microfilm's "mitigation efforts"—and that Microfilm using its own hourly employees does not preclude such recovery.[1] *Id*. at 18-21. Microfilm contends again that the policy and Louisiana law permit it to make claims on behalf

---

[1] Microfilm is arguing against a strawman. Gotham did not say that Microfilm's employees couldn't perform the work, only that it needed more specificity as to what work they did and how long it took.

of the property owners—its customers. *Id*. at 22–28. Finally, Microfilm alleges that its bad faith claim cannot "be Dismiss" yet—this would be "premature." *Id*. at 28–29.

Gotham filed a Reply. R. Doc. 44. Within, Gotham basically reiterates their arguments regarding potential "windfall" and the "$2,500 cap." *Id*. at 2-3.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247). "The moving party may meet its burden to

demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*

### III.  LAW AND ANALYSIS

What we have here are three relatively *simple* issues that have been beaten to a pulp.  Never fear, however, for the Court is here.  In short, it is *disputable* whether Microfilm is entitled to bad faith statutory penalties; the $2,500 cap *indisputably* does not apply to the freeze-drying expenses; and it is *indisputable* that Microfilm may collect insurance proceeds on behalf of its depositors.  We address each issue in turn.

#### 1.  Bad-Faith

La. R.S. 22:1892 "penalizes insurers for failing to pay claims within thirty […] days […] after receiving satisfactory proof of loss, but only if such failure is 'arbitrary, capricious, or without probable cause.'"  *Versai Management Corp. v. Clarendon America Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010).  To prove that an insurer has breached its duty to timely pay claims, a plaintiff must show: "(1) the insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious, or without probable cause."  *Id*. at 738-39 (citing *La. Bag Co. v. Audubon Indem. Co.*, 999 So.2d 1104, 1112-13 (La. 2008). An insurer has received satisfactory proof of loss "when the insurer has adequate knowledge of the loss."  *Id*. at 739 (citing *In re Hannover Corp. of America*, 67 F.3d 70, 73 (5th Cir. 1995).

Under the bad-faith statute, "the insured has the burden of proving that the insurer acted in bad faith." *Kodrin v. State Farm Fire and Cas. Co.*, 314 Fed. Appx. 671, 679 (5th Cir. 2009) (citing *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003). When determining whether an insurer's refusal to pay was "arbitrary" or "capricious," the Fifth Circuit has held a "vexatious refusal to pay" or a "refusal to pay without reason or justification" would satisfy the bad faith requirement of the statute. *Id*. The Louisiana Supreme Court has held that "any insurer who fails to pay said undisputed amount has acted in a manner, that is, by definition, arbitrary, capricious or without probable cause." *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1115 (La. 2008). However, an insurer's refusal to pay a claim or withholding of funds is not in bad faith when based on a genuine dispute over coverage. *See Versai*, 597 F.3d. at 737 ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss.").

Here, a genuine dispute of material fact remains as to whether Gotham was in violation of La. R.S. 22:1892. First, Microfilm fails to indisputably establish when Gotham received satisfactory proof of loss. In the deposition of Charles Adams, who oversaw the adjustment of Microfilm's claim, Mr. Adams responds to questions about the process of how Gotham pays out its claims:

> Q: Does Gotham condition its payment of any undisputed tenders upon the insured's signing the proof-of-loss form?
>
> A: Yes
>
> Q: So as I understand the process from reviewing the claim notes and my deposition of Gotham's corporate

> representative, the way I understand it is that an amount that's uncontested to be paid under a policy is determined, and then after that, they'll send a proof-of-loss form to the insured. Does that sound correct, according to your experience?
>
> A: Yes
>
> Q: And then once they determine that a certain amount is owed under the policy and it's uncontested and they send that form, Gotham's not going to pay until they receive the signed form back; is that fair?
>
> A: That's fair.

R. Doc 33-1 at 17–18 (citing R. Doc. 33-5 at 7-8) (objections omitted).

Mr. Adams appears to confirm here that the proof-of-loss forms are not sent by Gotham until the amount to be paid under the policy is undisputed. Later in that same deposition, however, Mr. Adams contradicts the notion that the payments were uncontested at the time of issuing proof-of-loss forms. Rather, Mr. Adams characterizes the proof of loss forms as being necessary for the adjusting of claims:

> Q: Do you know if the proof of loss forms that Gotham uses include information that helps Gotham to determine whether there is other insurance or insurable interest?
>
> A: I believe they do, yeah.
>
> Q: Do you know if those reasons, insurable interest or other insurance, are, in part, the reasons that Gotham requests insureds sign proof of loss forms?
>
> A: Yes. They – we need that information in order to fully adjust the claim.

R. Doc. 39-5 at 4.

Such a contradiction calls into question when exactly in the process of paying out claims Gotham obtains satisfactory proof of loss, and necessarily precludes

summary judgment. *See Bainbridge, LLC v. W. World Ins. Co.*, 682 F.Supp.3d 634, 640 (E.D. La. 2023) (holding that an insurer could not have received satisfactory proof of loss until it obtained copies of leases from the insured to determine if the property was covered by other insurance).

Secondly, it is generally true that an insurer cannot start its own "bad faith" clock by requiring a signed proof of loss form before tendering payment on undisputed insurance proceeds. *See La. Bag Co.*, 999 So. 2d at 1119–20 ("An insurer's requirement that it receive its form of proof of loss before payment is insufficient to create probable cause to delay payment."). Instead, the clock starts when the insurer receives satisfactory proof of loss—and certainly once the claim becomes undisputed. *See Versai*, 597 F.3d. at 739 (citing *La. Bag. Co.*, 999 So.2d at 1116). However, when an insurance policy expressly excludes claims for losses covered by other insurance and predicates payment on being assured that other insurance does not exist, we hold that the insurance company does not have satisfactory proof of loss—nor is the claim really "undisputed"—until it receives information regarding other insurance or the lack thereof. *Cf. Bainbridge*, 682 F. Supp. 3d at 640; R. Doc. 33-3 at 11, 14. Because the record does not support a finding that Gotham received this information any earlier than Microfilm's completion of the signed proof of loss forms, summary judgment assigning bad faith to Gotham would be improper.

Additionally, Microfilm fails to show that there exists no genuine dispute as to whether Gotham's failure to pay was arbitrary, capricious, or without probable cause. The policy contained an exclusion stating, "property that is covered under another coverage form of this or any other policy in which it is more specifically described" is

not considered "Covered Property." R. Doc 33-3 at 14. As confirmed by Mr. Adams in his deposition, the proof-of-loss form provided "information that helps Gotham to determine whether there is other insurance." R. Doc. 39-5 at 4. The Policy's specific exclusion of property covered by other insurance opens the possibility that receipt of the proof of loss form was essential to determine whether there was coverage under Gotham's policy. *See Bainbridge*, 682 F. Supp. 3d at 640 (where an insurer was not found to have acted arbitrarily or capriciously for seeking out all information before tendering payment that could affect the coverage under the Policy which excluded property covered by other insurance.).

### 2. Property of Third Persons

We find that the language of the policy does not require the person asserting the claim to be the owner. It is clear from the unambiguous language of the policy that both the policyholder, and the owner of the property, are equally empowered to settle a claim. *See* R. Doc. 33-3 at 23 ("We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property."). Louisiana law further bolsters this result. *See* La. Civ. Code art. 2934 ("When the thing deposited is lost or deteriorated without any fault of the depositary, the depositary is nevertheless bound to deliver to the depositor whatever value the depositary received as a result of that loss, including the proceeds of any insurance."). Accordingly, Microfilm, as a depositary, can and should obtain insurance proceeds for covered losses on behalf of its depositors, and distribute them accordingly. *See* Comment (b) to La. Civ. Code Ann. art. 2934 (2003) ("…[T]he depositary is bound to deliver to the depositor the

proceeds of casualty insurance that he received as compensation for the loss or deterioration of the thing that was deposited."). And Gotham's reliance on *Reynolds v. Select Properties, Ltd.,* is misplaced. *See* R. Doc. 37-1 at 21 (citing 634 So. 2d 1180 (La. 1994)). *Reynolds,* applying the Louisiana Self–Service Storage Facility Act, La. R.S. 9:4756–9:4760, held that self-storage facilities have no proprietary interest in the property stored within the spaces they lease. 634 So. 2d at 1185. Because Microfilm is indisputably not a self-storage facility, and does not merely lease space to its customers, *Reynolds* is inapposite. *See* R. Doc. 35-14. Last, Gotham's concern about windfall is ameliorated by the reality that if Microfilm collected insurance proceeds for the losses of others and did not distribute them in good faith, it would be violating its duty under La. Civ. Code art. 2934.

### 3. Freeze-Drying

It is true that the policy limits the "replace[ment] or restor[ation]" of "information" on "valuable paper" to $2,500. *See* R. Doc. 33-3 at 20. But what does that mean? Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045 (1987); see also *Cadwallader*, 848 So.2d at 580; *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994). An insurance contract must be "construed according to the entirety of its terms and conditions as set forth

in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. R.S. Ann. § 22:654 (2004).

"The words of a contract must be given their generally prevailing meaning." La. Civ. Code Ann. art. 2047 (1987); *see also Cadwallader*, 848 So.2d at 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046 (1987). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Cadwallader*, 848 So.2d at 580. Where, however, an insurance policy includes ambiguous provisions, the "[a]mbiguity ... must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *La. Ins. Guar. Ass'n*, 630 So.2d at 763 (citing La. Civ. Code Ann. art. 2050 (1987) ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.")). "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code Ann. art. 2048 (1987). "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." *Id*. art. 2049 (1987).

Remember, Microfilm contends that what it did was preservation—and not replacement or restoration—of the information. R. Doc. 33-1 at 25–27. And while contrary to Gotham's arguments now, Gotham's own corporate representative, Steven Parrett, articulated a position similar to that of Microfilm, testifying in his

30(b)(6) deposition that freeze-drying did not "replace" or "restore" the information. R. Doc. 33-4 at 10–11, 15–16. We agree with Microfilm and Mr. Parrett. To "preserve" means "to keep safe from injury, harm, or destruction" or "to keep alive, intact, or free from decay." *Preserve,* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/preserve (last accessed August 13, 2024); *see Prejean v. Guillory,* So. 3d 274, 279 (La. 2010) ("Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract."); *see also*, *In re Liljeberg Enterprises, Inc.,* 304 F.3d 410, 439 (5th Cir. 2002) ("Under Louisiana law, a contract is the law between the parties, and is read for its plain meaning."). "Preserv[ation]" is not synonymous with "replace[ment]." *Replace,* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/replace (last accessed August 13, 2024) (Replace means "to restore to a former place or position" or "to put something new in the place of."). "Restor[ation]" does not fit the bill either. *Restore,* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/restore (last accessed August 13, 2024) (Restore means "to put or bring back into existence or use" or "to bring back to or put back into a former or original state"). Accordingly, what Microfilm did to "preserve" these documents is not susceptible to the $2,500 cap.

### IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Microfilm's first Motion (R. Doc. 33) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** insofar as Microfilm's

freeze-drying expenses are not subject to the policy's $2,500 cap, and **DENIED** insofar as it remains disputed whether Microfilm is entitled to bad-faith penalties.

**IT IS FURTHER ORDERED** that Microfilm's second Motion (R. Doc. 35) is **GRANTED**, and Microfilm can prosecute claims on behalf of its depositors.

**IT IS FURTHER ORDERED** that Gotham's Motion (R. Doc. 37) is **DENIED.** The Motion is **DENIED** inasmuch as Microfilm's bad-faith claim remains disputed; Microfilm can prosecute claims on behalf of its depositors; and Microfilm's freeze-drying expenses are not subject to the policy's $2,500 cap.

**THUS DONE AND SIGNED** this 13th day of August, 2024.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**